UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5896-GW-MAAx | Date | October 26, 2020 |
|---|---|---|---|
| Title | *Scott C. Hartmann v. Verb Technology Company, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Jacob A. Goldberg

Attorneys Present for Defendants:

Catherine E. Moreno
Steven M. Schatz

**PROCEEDINGS:   TELEPHONIC HEARING ON AMENDED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE PROCEDURES [67]**

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS the Motion. Final Fairness Hearing is set for February 8, 2021 at 8:30 a.m. Court to review and issue its order.

Plaintiff's request for leave to file the Supplemental Agreement under seal is granted.

Counsel are to file a two-page document advising the Court when the Claims Administrator has reached $100,000.

:   06

Initials of Preparer   JG

***Hartmann v. Verb Technology Company, Inc., et al.***; Case No. 2:19-cv-05896-GW-(MAAx)
Tentative Ruling on Motion for Preliminary Approval of [Class Action] Settlement and Notice Procedures

## I. Background

Lead Plaintiff J. Leister and named Plaintiff Alexander Wolfson, individually and on behalf of a putative class ("Plaintiffs"), sue Verb Technology Company, Inc. ("Verb") and Rory J. Cutaia for securities fraud. *See generally* Consolidated Amended Complaint ("Amended Complaint"), Docket No. 51. The putative class contains all persons or entities that purchased or otherwise acquired Verb common stock between January 3, 2018 and May 2, 2018, both days inclusive (the "Class Period"). *Id.* ¶ 1. Defendant Cutaia served as the chairman of the board and Chief Executive Officer of Verb. *Id.* ¶ 17.

### A. Factual Background

Verb purportedly operates as an applications services provider with cloud-based software products for businesses. *Id.* ¶ 20. As part of its business, Verb utilizes interactive videos as part of its customer relationship management application. *Id.* On January 3, 2018, Verb announced a purported agreement with Oracle America, Inc. (the "Oracle Agreement") to develop an app integrating Verb's notifiCRM technology into Oracle's NetSuite platform. *Id.* ¶ 3. Throughout the Class Period, Verb touted the Oracle Agreement. *See id.* ¶¶ 3, 6, 38. Verb claimed that Oracle's salesforce of 2,000 employees would sell Verb's technology as an "upgrade" to NetSuite in an interview with Uptick Newswire posted on February 23, 2018. *Id.* ¶ 38. The stock and trading volume increased over the Class Period. *Id.* ¶¶ 37, 41, 67, 72. During the first quarter of 2018, after disclosing and touting the Oracle Agreement, Verb raised over $2.5 million in net proceeds from financing activities – over six times what it raised during the first quarter of 2017. *Id.* ¶ 6.

On April 23, 2018, Verb released the actual terms of the Oracle Agreement, revealing that there was no joint agreement for Oracle to use its substantial salesforce to market Verb's product. *Id.* ¶¶ 59, 61-62. The text of the Oracle Agreement also revealed the true nature of the relationship between Oracle and Verb: Verb had simply been provided with an application developer toolkit for its program to interface with Oracle NetSuite. *Id.* ¶ 63. Plaintiffs claim that Verb's prior description overstated the company's deal with Oracle. *See id.* ¶ 64.

1

The parties began settlement negotiations in December 2019. *See* Memorandum of Points and Authorities in Support of Unopposed Motion for Preliminary Approval ("Motion"), Docket No. 66-1, at 4. The parties reached an agreement in September 2020. *See id.*; Stipulation of Settlement ("Settlement"), Docket No. 66-3.

B. Proposed Settlement

The Settlement provides for a release of all claims that Plaintiffs have or could have brought relating to the purchase or acquisition of Verb securities during the Class Period, in exchange for a settlement amount ("Settlement Fund") of $640,000. *See* Settlement ¶¶ 1.26, 1.30, 1.37. The Class Period is the period from January 3, 2018 through May 2, 2018, both days inclusive. *Id.* ¶ 1.33. The proposed class ("Settlement Class") is defined as "all persons who purchased or acquired Verb common stock during the Settlement Class Period," excluding Defendants and all Verb officers and directors during the Settlement Class Period, and any immediate family members, affiliated or controlled entities, legal representatives, heirs, successors, or assigns of any excluded person, as well as those who opt out. *Id.* ¶ 1.31.

Defendants will pay $640,000 into the Settlement Fund over twelve months. *Id.* ¶ 2.1. Defendants will make an initial payment of $60,000, followed by ten consecutive monthly payments of $28,000, and a final payment of $300,000. *Id.*

The Settlement Fund will be allocated as follows:

- To pay taxes and tax expenses;
- To pay Administrative Costs up to $200,000[1];
- To pay Lead Counsel's attorneys' fees and expenses up to 25% of the Settlement Fund, or $160,000;
- To pay reasonable litigation expenses up to $25,000;
- To pay lead Plaintiff J. Leister and named Plaintiff Alexander Wolfson for reimbursement of their time and expenses ("Fee and Expenses Award") up to $1,000 each; and
- To distribute the balance of the remaining fund ("Net Settlement Fund") to authorized claimants.

*Id.* ¶¶ 1.20, 3.5, 7.2; Proposed Summary Notice, Docket No. 66-6, at 19.

The Settlement is not a claims-made settlement, and no portion of the Settlement Fund will be returned to Defendants or their insurers. *See* Settlement ¶ 7.4. Any funds remaining in the Net

---

[1] The Court notes that $200,000 is almost one-third of the Settlement Fund. The Court thus would ask Plaintiffs to explain why this is a reasonable amount to pay the Claims Administrator.

Settlement Fund will be used "to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants," then "to pay any additional Administration Costs," and finally, to make a second distribution to Authorized Claimants of at least $10.00 each. *See* Proposed Summary Notice at 11.

## II.  Legal Standard

There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).  Nonetheless, Federal Rule of Civil Procedure 23(e) requires district courts to approve class action settlements.  "[S]ettlement class actions present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Allen*, 787 F.3d at 1223 ("[T]he district court has a fiduciary duty to look after the interests of those absent class members.").  In cases such as this one where the parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of class action settlements invokes a two-step inquiry.  At the first step, courts decide if a class exists. *Staton*, 327 F.3d at 952.  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  At the second step, courts consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026.  If the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Id.*  Courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026.  Courts cannot "delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

## III.  Discussion

### A.  Class Certification

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012);

3

*In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[2] and at least one of the subparagraphs of Rule 23(b).[3] *Id.* at 1234. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 564 U.S. at 350. The court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits. *Id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975); *Sali*, 889 F.3d at 630 ("At this preliminary stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.").

### 1. *Numerosity*

Rule 23(a)(1) requires a demonstration that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity

---

[2] Rule 23(a) requires that the party/parties seeking certification show:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[3] Here, Plaintiffs seek certification under Rule 23(b)(3). *See* (Motion at 5.

requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, the size of the proposed settlement class is unknown. *See* Motion at 5-6; Amended Complaint ¶ 81. However, "where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) (quotation omitted). Plaintiffs estimated "hundreds or thousands" of proposed class members in their Amended Complaint. *See* Amended Complaint ¶ 81. There were approximately 10.4 million split-adjusted shares outstanding at the end of the Settlement Class Period. *See* Proposed Summary Notice at 2. This amount satisfies a common sense presumption that there are enough class members to make joinder impracticable. *See Nguyen*, 287 F.R.D. at 569. The Court finds the numerosity requirement satisfied.

### 2. *Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts must construe this rule "permissively." *Hanlon*, 150 F.3d at 1019. "All questions of fact and law need not be common to satisfy the rule." *Id.* "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359 (internal quotation marks and brackets omitted). "Their claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 350.

The Court is satisfied that the commonality requirement is met here because the alleged unlawful practices – such as whether the Defendants' alleged acts violated the Securities Exchange Act of 1934 and whether Defendants' statements to the investing public during the Class Period misrepresented material facts about Verb's financial condition, business, operations, and management – present common questions of fact across the proposed class. *See* Motion at 6; Amended Complaint ¶ 82.

### 3. *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the

claim or defense of the class representative, and not to the specific facts from which it arose . . . ." *Id.* (citation and internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members").  The representative plaintiffs' claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . . ."  *Hanlon*, 150 F.3d at 1020.  In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457 U.S. at 157 n.13.

The Court finds that Plaintiffs Leister and Wolfson's claims meet the typicality requirement.  They, like all members of the Settlement Class, purchased Verb common stock during the Settlement Class Period, held shares up to or through the end of the Settlement Class Period, and suffered significant losses.  *See* Motion at 6-7; Leister PSLRA Certification, Docket No. 26-2; Wolfson PSLRA Certification, Docket No. 51-1.

       4.  *Adequacy*

Representative parties must also fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a)(4).  Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *see also Sali*, 889 F.3d at 634; *Staton*, 327 F.3d at 957; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them.  The Rule does not require more.").

6

The Court is satisfied that the adequacy requirement is met.  Neither Named Plaintiffs nor Lead Counsel have any apparent conflicts of interest.  *See* Motion at 7-8.  Lead Counsel has substantial class action and securities litigation experience, having served as lead/co-lead counsel in several securities class actions.  *See* Goldberg Decl. Exh. 2, Docket No. 66-10.

### 5.   *Predominance and Superiority*

Because Plaintiffs seek to certify a class under Rule 23(b)(3), the Court must analyze whether the proposed class satisfies the predominance and superiority inquiry.  Rule 23(b)(3) provides that:

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

Here, Plaintiffs assert that the only issues that may differ among class members is the amount of damages, as the "issues surrounding Defendants' alleged conduct, such as whether their statements were materially false, whether they acted with requisite scienter, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class."  *See* Motion at 8.  Accordingly, the Court finds that the adjudication of these common issues "will help achieve judicial economy," further the goal of efficiency, and "diminish the need for individual inquiry," thus satisfying the predominance requirement.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) (quoting and citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)); *see also Amchem*, 521 U.S. at

7

623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (citation omitted).  For the same reasons, the Court also finds a class action to be superior to any other method for efficiently deciding the disputes.

Because the Court has found that Plaintiffs have sufficiently satisfied the requirements of Rules 23(a) and 23(b), the Court would find that certification of the Settlement Class is warranted.

B.  Proposed Settlement

The Ninth Circuit has noted various factors for courts to consider in deciding whether a class action settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted).

The Ninth Circuit also instructs district courts to examine potential red flags indicating collusion.  "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth*, 654 F.3d at 947.  Subtle signs of collusion include:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class;" and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties."  *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013).  A court need not conduct a complete analysis of the fairness factors at this time because "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final

8

approval hearing[.]" *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, at this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted).

Under amendments to Rule 23(e) effective December 1, 2018,[4] district courts must consider a list of factors delineated in Rule 23(e)(2):

> **(2)** ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> **(A)** the class representatives and class counsel have adequately represented the class;
>>
>> **(B)** the proposal was negotiated at arm's length;
>>
>> **(C)** the relief provided for the class is adequate, taking into account:
>>
>>> **(i)** the costs, risks, and delay of trial and appeal;
>>>
>>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>>
>> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Regarding these recent amendments, the Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns."

---

[4] After propagating certain amendments, the Supreme Court transmitted those amendments to Congress, instructing that those amendments "shall take effect on December 1, 2018, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order Submitting Amendments to Federal Rules of Civil Procedure at 3 (April 26, 2018), https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf; *see generally, In re Pangang Grp. Co., LTD.*, 901 F.3d 1046, 1050 (9th Cir. 2018) (addressing the amendment process).

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  The Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."[5]  *Id.*  As such, to the extent possible the Court would apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent.  The Court would also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors . . . distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

    1.   *Whether the Class is Adequately Represented and the Settlement is the Product of Serious, Informed, Non-Collusive Negotiations*

Addressing whether the class is adequately represented and the Settlement is the product of serious, informed, non-collusive negotiations, the Court first looks to whether the parties engaged in an adversarial process to arrive at that agreement.  Plaintiffs filed an Amended Complaint after "Lead Counsel conducted a thorough review of Verb's SEC filings and publicly available information."  *See* Motion at 13; Amended Complaint.  Lead Counsel also "kept apprised of Verb's evolving financial situation – a key factor in settlement negotiations given the start-up's stated reliance on outside financing to fund its operations."  *Id.*  The parties then engaged in motion to dismiss briefing and months of settlement negotiations.  *Id.*  Experienced counsel represented the parties throughout the litigation, and the Court finds that Plaintiffs have "demonstrated that there is a substantial risk in litigating this case further," and that the settlement negotiations were serious and informed.  *See In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015); *see also* Motion at 13-14.

No "subtle signs of collusion" are present here.  *See In re Bluetooth*, 654 F.3d at 947.  The total Settlement Fund amount is $640,000, with attorneys' fees of up to $160,000, or 25% of the Settlement Fund.  *See* Settlement ¶¶ 1.30; Proposed Summary Notice at 19.  While the Court will conduct a review of the reasonableness of the requested attorneys' fees when Plaintiffs' counsel submits such a motion, the Court would not find that the agreed-upon amount represents a disproportionate distribution for purposes of determining collusion.  Attorneys' fees will be paid

---

[5] "[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . ."  *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002).

by the Settlement Fund, so the case does not present a "clear sailing" arrangement.  *See* Motion at 14; Proposed Summary Notice at 19.  Finally, no attorneys' fees or costs not awarded will revert back to Defendants.  *Id.*  As such, the Court would not find that any indicators of collusion weigh against approval.

In sum, it is clear from the proceedings and the proposed Settlement that the class representatives and class counsel have adequately represented the class and that the proposal was negotiated at arm's length, which goes to at least two of the factors in the recently amended Rule 23(e)(2).  *See* Fed. R. Civ. P. 23(e)(2)(A)-(B).  The above speaks to some degree to Rule 23(e)(2)(C), but the Court will include other relevant analysis for that determination below.

### 2.  *Obvious Deficiencies*

The Court would not find any obvious deficiencies in the Settlement.  The Net Settlement Fund will be distributed based on each individual's claims, based on a proposed Plan of Allocation. *See* Settlement ¶ 7.2.  The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's loss.  *See* Proposed Summary Notice at 10.  The Settlement allows class members to opt out.  *See* Settlement ¶ 1.17. It provides for a third-party settlement administrator to perform notification services and claims administration.  *Id.* ¶ 7.1.  As the Court has already discussed, no signs of collusion are present. Based upon this showing, the court is satisfied there are no obvious deficiencies with the proposed settlement.

### 3.  *Preferential Treatment*

The Court is inclined to find that the Settlement does not improperly provide preferential treatment to any class member.  Each class member's recovery will be based on the specific harms that class member experienced, as the Claims Administrator will determine each claimant's *pro rata* share of the Net Settlement Fund based on that claimant's loss.  *See* Proposed Summary Notice at 10.

The Court does not take issue with the lead plaintiff and named plaintiff receiving up to $1,000 in class representative awards.  *See* Motion at 18.  Service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement unfair or unreasonable.  *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009).  The $1,000 requested per named plaintiff is reasonable.  *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) ("Several courts in [the Northern District of

California] have indicated that incentive payments of $10,000 or $25,000 are quite high and /or that, as a general matter, $5,000 is a reasonable amount.") (quoting *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

Thus, the Court is inclined to find that the proposed settlement does not improperly provide preferential treatment to any class members.

### 4.   *Falling Within the Range of Possible Approval*

"To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Shuchardt v. Law Office of Rory W. Clark*, No. 15-CV-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080). Defendants will pay $640,000, which according to Plaintiffs "represents 46% of the approximately 1.4 million in estimated aggregate damages under a conservative damages analysis, and 4.6% of the approximately 13.85 million in estimated damages under an aggressive (but more challenging to prove) damages analysis." *See* Motion at 15-16. This percentage of estimated damages appears to be higher than the median percentage of investor losses recovered in securities class action settlements. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02–ML–1475–DT, 2005 WL 1594389, at *8 (median amount recovered was between 2.2% and 3% from 2002-2006)).

Plaintiffs note that "an evaluation of the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of the settling parties." *See* Motion at 16. The Court agrees with Plaintiffs that "the proposed Settlement reflects concessions by both Defendants and Plaintiffs that are reasonable and fair, and that the Settlement is in the best interests of the Settlement Class." *Id.* The risks and costs of litigating the case through class certification, summary judgment, trial, and appeal are high for both sides, as Verb is a start-up company. *Id.*

Plaintiffs also note that "this factor takes into account 'any agreement made in connection with the propos[ed]' settlement" under Rule 23(e)(3). *Id.; see also* Fed. R. Civ. P. 23(e)(2)(C)(iv). According to Plaintiffs, the only such agreement here "is the Parties' confidential Supplemental Agreement Regarding Requests for Exclusion" ("Supplemental Agreement re Exclusion"), which "would permit Defendants to terminate the Settlement if the number of Class Members who

12

request exclusion in connection with the Settlement reaches a certain threshold." *See* Motion at 16. The Court agrees that such agreements generally "are standard provisions in securities class actions" and requests that the parties provide a copy of this agreement. *Id.* at 16-17. The Court would permit the parties to file the agreement under seal.

In sum, based on the foregoing factors and all considerations delineated in the recently amended Rule 23(e)(2), the proposed Settlement is sufficiently fair, adequate, and reasonable to merit preliminary approval. The Court would conclude that the "record support[s] the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1), 2018 advisory committee notes.

C. Adequacy of Class Notice

Under Rule 23(e), district courts must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *See* Rule 23(e)(1)(B). Regarding Rule 23(b)(3) classes, the following subsection provides:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B) (reformatted for style herein). As such, the rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In addition, due process mandates that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *See id.* at 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Class notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

In this case, the parties will hire a third-party Claims Administrator to administer the Settlement. *See* Motion at 2. Within 14 days after the Court enters the Preliminary Approval

13

Order, the Claims Administrator will "mail requests to nominees or custodians who held Verb common stock during the Settlement Class Period as record owners but not as beneficial owners, requesting the names of all beneficial owners of Verb common stock." *See* Motion at 20 n.8. As soon as practicable after receiving lists of beneficial owners, the Claims Administrator will provide notice "to all identifiable Settlement Class Members identified by records maintained by Verb or its transfer agent, or identified by banks, brokerage firms, or other nominees, as having purchased Verb common stock during the Settlement Class Period." *Id.* at 20. The Claims Administrator will provide notice through a Postcard Notice "containing instructions on how Settlement Class Members can obtain copies of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release ("Proof of Claim"). *Id.* at 2. The Postcard Notice "prompts potential Settlement Class Members to view the Notice online or to contact the Claims Administrator to request a hard copy of the Notice." *See id.* at 20; *see also* Postcard Notice, Docket No. 66-5. The Claims Administrator will post the Preliminary Approval Order and the Settlement with all exhibits – including the Proof of Claim form and a copy of the Notice – on the website within fourteen days after the Court enters the Preliminary Approval Order. *See* Motion at 21.

The Court has analyzed and approves the contents of the Notice, Proof of Claim, and Postcard Notice. After reviewing the proposed notice procedures, the Court would conclude that the proposed class notice is the "best notice that is practicable under the circumstances, including individual notice to all embers who can be identified through reasonable effort." *See* Rule 23(c)(2)(B). As long as such notice includes "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)," then the Court would deem this requirement satisfied. *See id.*

D. Proposed Plan of Allocation and Schedule of Events

Plaintiffs request that the Court preliminarily approve the Plan of Allocation for the Settlement Fund. *See* Motion at 18. The Notice describes the Plan of Allocation, developed by Lead Counsel in consultation with Plaintiffs' damages expert and the Claims Administrator. *See id.* at 18-19; *see also* Proposed Summary Notice at 10-11. The Court agrees that the proposed plan provides a fair and reasonable method for allocating the Net Settlement Fund to Authorized

Claimants, as each claimant will receive their *pro rata* share of the fund based on their loss, calculated by the formula set forth in the Notice. *See* Motion at 19; Proposed Summary Notice at 12-15. The Court thus preliminarily approves the Plan of Allocation.

The Court also approves Plaintiffs' proposed schedule of events set forth in the motion. *See* Motion at 23-24.

E.   Appointing Class Counsel and Class Representatives

The Court has found that the lead Plaintiff and named Plaintiff are adequate to represent the class for certification purposes and finds no reason to believe that the Plaintiffs will not vigorously represent the class moving forward. The Court thus would appoint the requested class representatives for purposes of this lawsuits and the Settlement. *See Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 861425, at *5 (N.D. Cal. Feb. 22, 2019) ("Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.").

The Court must also appoint class counsel. *See* Fed. R. Civ. P. 23(c)(1)(B). Factors that the Court considers include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *See* Fed. R. Civ. P. 23(g)(1)(A). Based on the evidence presented going toward these factors, the Court would find that these factors cut in favor of appointing The Rosen Law Firm, P.A. as class counsel. The Court would hereby appoint The Rosen Law Firm, P.A. as class counsel for purposes of this litigation and the Settlement.

## IV.  Conclusion

Based on the foregoing discussion and assuming there are no problems as to the proposed amount set aside for the Claims Administrator (*see* footnote 1, *supra*) and with the Supplemental Agreement re Exclusion (*see* page 12, *infra*), the Court would **GRANT** the motion for preliminary approval.