Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jacob A. Goldberg (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
            jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT C. HARTMANN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERB TECHNOLOGY COMPANY, INC., and RORY J. CUTAIA,<br><br>Defendants. | No. 2:19-cv-05896-GW-MAA<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: February 18, 2021<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

BUMJIN KIM, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERB TECHNOLOGY COMPANY, INC., and RORY J. CUTAIA,

Defendants.

No. 2:19-cv-06944-GW-MAA

CLASS ACTION

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  CASE BACKGROUND.........................................................................................3

    A.  Plaintiffs' Allegations .................................................................................3

    B.  Procedural History ......................................................................................4

III.  CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ........4

    A.  The Settlement Class Satisfies All Requirements of Rule 23(a) .............5

    B.  The Settlement Class Satisfies All Requirements of Rule 23(b)(3) .........6

IV.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ..........7

    A.  The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement ........................................................................9

        1.  Plaintiffs Faced the Risk of Dismissal.........................................10

        2.  Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial..........................11

        3.  Plaintiffs Faced Additional Risks of Continued Litigation .........12

    B.  The Amount Obtained in Settlement Supports Final Approval..............14

    C.  The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval.............................................................................16

    D.  The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ...................................18

    E.  The Reaction of the Settlement Class Supports Approval......................19

    F.  The Settlement Meets the Remaining Rule 23(e)(2) Factors .................20

        1.  The Proposed Method for Distributing Relief Is Effective .........20

i

2.    The Attorneys' Fees Are Appropriate ...........................................21

3.    The Parties Have No Other Agreements Besides Opt-Outs.........21

4.    There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably ...............................22

G.    The Court Should Approve the Plan of Allocation................................22

V.    NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS.......23

VI.    CONCLUSION .........................................................................................25

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................6, 7

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...........................................................................................11, 12, 13

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ..................................................................................7

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............19

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)....................11

*DirecTV*,
   221 F.R.D...............................................................................................................19

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005).........................................................................................10, 11

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980)...............................................................................18

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ..............................................................................10

*Evans v. Jeff D.*,
   475 U.S. 717 (1986)................................................................................................7

*Glass v. UBS Fin. Servs., Inc.*,
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .....................17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................9, 14, 20

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...................9

iii

*Hubbard*,
 688 F.3d ...............................................................................................................15

*In re BankAtlantic Bancorp, Inc.*,
 No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .........................13

*In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX),
 2013 WL 12126754 (C.D. Cal. May 16, 2013)........................................................6

*In re Cooper Companies Inc. Sec. Litig.*,
 254 F.R.D. 628 (C.D. Cal. 2009).............................................................................7

*In re Critical Path, Inc.*, No. C,
 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002).........................17

*In re Datatec Sys., Inc. Sec. Litig.*,
 No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .....................23

*In re Gen. Instrument Sec. Litig.*,
 209 F. Supp. 2d 423 (E.D. Pa. 2001)................................................................23, 24

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
 279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................15

*In re Heritage Bond Litig.*,
 No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...10, 13, 15, 19

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................24

*In re LJ Int'l, Inc. Sec. Litig.*,
 No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) .........11

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ...........................................................................passim

*In re NeoPharm, Inc. Sec. Litig.*,
 705 F. Supp. 2d 946 (N.D. Ill. 2010)......................................................................13

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................7, 15, 19, 22

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ................................................................................13

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................................19

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................24

*In re Portal Software, Inc. Sec. Litig.*,
No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007)....................18

*In re Puda Coal Sec. Inc., Litig.*,
30 F. Supp. 3d 230 (S.D.N.Y. 2014) .....................................................................13

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ...........19, 20

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017)......5, 6

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999).........................................................................10

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ..............................................................................7

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................22

*In re Zynga Inc. Sec. Litig.*,
No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................18

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .....16, 17

*Kamakana v. City & Cty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ............................................................................22

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................................9

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ........................................................................ 17

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............................................................ 9

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
   No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) .. 5, 6, 7

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................... 9, 14

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ........... 19

*Ramsey v. MRV Commc'ns Inc.*,
   No. CV0804561GAFRCX, 2010 WL 11596641 (C.D. Cal. Nov. 16, 2010) ......... 11

*Rieckborn v. Velti PLC*,
   No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................ 17

*Riker v. Gibbons*,
   No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .......... 18, 23

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...................................................................... 13

*Roberti v. OSI Sys., Inc.*,
   No. CV1309174MWFMRW, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ........... 17

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................... 24

*Salazar v. Midwest Servicing Grp., Inc.*,
   No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ............. 9

*Tadepalli v. Uber Techs., Inc.*,
   No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ............. 17

*Tom v. Com Dev USA, LLC*,
   No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) ............. 9

vi

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................................8, 9

*Vinh Nguyen v. Radient Pharm. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) ...........................................................................................5

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................................11

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...............................................................................................................21

15 U.S.C. § 78u-4(a)(7) ...............................................................................................................24

**Rules**

Fed. R. Civ. P. 23(c)(1)................................................................................................................12

Fed. R. Civ. P. 23(e) ............................................................................................................2, 8, 9

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................................................24

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................................21

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................................................21

Rule 23 .............................................................................................................................4, 7, 21, 24

Rule 23(a)........................................................................................................................................4, 5

Rule 23(b)(3)...................................................................................................................................5, 6

Rule 23(e)(2) .....................................................................................................................................8

Rule 23(e)(3) .....................................................................................................................................8

Rules 23(a) and 23(b)(3)................................................................................................................5, 7

**Other Authorities**

Manual for Complex Litigation (Third) § 30.44 (1995)..............................................................19

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Lead Plaintiff J. Leister and Named Plaintiff Alexander Wolfson ("Plaintiffs") submit this memorandum in support of their motion for final approval of the Settlement and Plan of Allocation, and final certification of the Settlement Class.[1]

## I.  INTRODUCTION

Plaintiffs and Defendants Verb Technology Company, Inc. ("Verb" or "Company") and Rory J. Cutaia (collectively, "Parties") reached a settlement of this securities class action ("Settlement") for a cash payment of $640,000. The Settlement, reached only after protracted settlement negotiations, is a fair, reasonable, and adequate result, recovering between 4.6% and 46% of Plaintiffs' estimation of damages despite significant risk.[2] Plaintiffs now seek final approval of the Settlement. If approved, the Settlement will completely dispose of the action, settling all claims of Settlement Class Members who do not timely request exclusion. The Settlement is the product of arm's-length negotiations between counsel, representing a substantial benefit for the Settlement Class despite of several obstacles that Plaintiffs faced, including the amount of potentially recoverable damages, Defendants' potential defenses, Defendants' ability to pay a larger amount, and the risks of prosecuting this litigation through trial and appeals.

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement dated September 17, 2020 ("Settlement" or "Stipulation") (Dkt. No. 66-3). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Goldberg Dec." are to the Declaration of Jacob A. Goldberg, filed herewith. Citations to "Evans Dec." are to the Declaration of Sarah Evans, attached as Exhibit 1 to the Goldberg Dec. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' motion for an award of attorneys' fees and expenses, and awards to Plaintiffs, filed herewith.

[2] Under Plaintiffs' more aggressive damages analysis, the recovery is approximately 4.6% of damages, and under a more conservative damages analysis, the recovery is approximately 46% of Plaintiffs' estimation of damages.

1

The terms of the Settlement are set forth in the Stipulation. In the Court's Amended Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), Dkt. No. 75, the Court preliminarily approved the Settlement, preliminarily certified the Class for purposes of effectuating the Settlement, and directed that notice be disseminated to potential members of the Settlement Class.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e), focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Here, the Settlement is fair, reasonable, and adequate. Plaintiffs believe their case is strong, but they determined that executing the Settlement was fair and reasonable, and the amount adequate, given the risks inherent in litigation. Plaintiffs faced a high bar to survive Defendants' motion to dismiss. Even if Plaintiffs survived the motion to dismiss, they faced other material obstacles to proving their claims, such as prevailing at class certification, summary judgment, and trial. Rather than engaging in expensive, protracted litigation with no assurance of success, therefore, Plaintiffs agreed to an early resolution of this action as the best outcome for the Settlement Class. Through protracted negotiations with Defendants, Plaintiffs obtained a Settlement that is fair, reasonable, and adequate under the circumstances. The $640,000 cash Settlement eliminates the risks of continued litigation and provides a beneficial cash recovery for the Settlement Class. In light of the obstacles to recovery and the significant amount of time and expenses that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed plan of allocation is fair, reasonable, and adequate. Here, Lead Counsel developed the proposed plan of allocation in consultation with Plaintiffs' damages expert and the Claims Administrator. The proposed Plan of Allocation comports with applicable legal

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

principles and in no way favors Plaintiffs over other members of the Settlement Class. The Court should also approve the Plan of Allocation.

## II.      CASE BACKGROUND

### A.      Plaintiffs' Allegations

In their Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint"), Plaintiffs alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants Verb and Cutaia, on behalf of a putative class of investors who purchased Verb securities between January 3, 2018 and May 2, 2018, both dates inclusive. The Amended Complaint alleges that Defendants made false and misleading statements and omissions concerning an agreement the Company entered with Oracle America, Inc. ("Oracle"). Plaintiffs allege that they and the members of the Settlement Class suffered damages because they purchased Verb common stock at inflated prices and when the truth came out, the inflation dissipated.

Plaintiffs allege that at the beginning of 2018, the Company was a development-stage software company that needed outside financing to fund its continuing operations. In January 2018, Defendants announced an agreement with business software giant Oracle to jointly develop and jointly market the Company's notifiCRM application ("Oracle Agreement"). Defendants did not disclose the actual Oracle Agreement at that time. Plaintiffs allege that the Company's stock price soared following this announcement, and Verb raised over $2.3 million from selling its stock. In April 2018, the Company disclosed the full text of the Oracle Agreement, which Plaintiffs allege did not provide for Oracle to jointly develop or jointly market the Company's product. Plaintiffs allege that, on this news, the Company's stock price fell sharply, and continued to fall despite Defendants' assurances of an impending joint press release with Oracle, harming investors.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

## B.      Procedural History

Scott Hartmann commenced this Action by filing an initial complaint on July 9, 2019, alleging violations of the Exchange Act against Verb and Cutaia. Dkt. No. 1. On October 7, 2019, the Court entered an order (1) consolidating this action with a related action, captioned *Kim v. Verb Tech. Co., Inc. et al.*, Case No. 2:19-cv-06944 (together, "Action"); (2) appointing J. Leister as Lead Plaintiff; and (3)  appointing The Rosen Law Firm, P.A. ("Rosen") as Lead Counsel, pursuant to the Private Securities Litigation Reform Act of 1995, as amended ("PSLRA"). Dkt. No. 42.

On December 3, 2019, Plaintiffs filed their Amended Complaint. Dkt. No. 51. On February 28, 2020, Defendants filed their motion to dismiss the Amended Complaint. Dkt. No. 55. On April 10, 2020, Plaintiffs filed their opposition to Defendants' motion to dismiss. Dkt. No. 56. While Defendants' reply was pending, the Parties stipulated to stay the case to preserve resources for settlement and allow time to finalize the Settlement.

The Parties engaged in arm's-length settlement negotiations beginning in December 2019 and continuing for several months while the Parties briefed Defendants' motion to dismiss. The Parties agreed to and executed the Settlement in September 2020, memorializing it in the Stipulation.

## III.      CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 75 ¶2. As previewed in Plaintiffs' brief in support of preliminary approval of the Settlement (Dkt. No. 66-1), certification of the Settlement Class under Rule 23 is merited here. No pertinent changes have transpired since the Court issued the Preliminary Approval Order. Thus, the Court should certify the Settlement Class for settlement purposes.

Certification of a settlement class is appropriate where the proposed class and class representatives meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); Dkt. No. 66-1

(preliminary approval brief). Certifying a class action for damages also requires a showing under Rule 23(b)(3) of predominance and superiority. Fed. R. Civ. P. 23(b)(3).

The Parties stipulated to the certification of the Settlement Class only for settlement purposes. Stipulation ¶9.1. Plaintiffs request that the Court finally certify the Settlement Class defined in the Stipulation, and conditionally certified in the Preliminary Approval Order, comprising "all persons who purchased or acquired Verb common stock during the Settlement Class Period." *Id.* ¶1.31. "[E]xcluded from the Settlement Class are all: (i) Defendants and all officers and directors of Verb during the Settlement Class Period; (ii) immediate family members of any Person excluded under section (i) of this definition; (iii) any entities affiliated with or controlled by any person excluded under sections (i) and (ii) of this definition; (iv) the legal representatives, heirs, successors or assigns of any person excluded under subsections (i) through (iii) of this definition; and (v) Opt-Outs." *Id.* No circumstance has arisen since the Court's preliminary certification of the Settlement Class that should cause this Court to undo its certification.

Courts in the Ninth Circuit routinely certify class actions alleging securities fraud. *See, e.g., In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010). Here, the proposed Settlement Class meets all the requirements of Rules 23(a) and 23(b)(3), which is sufficient to certify it finally for purposes of the Settlement.

**A.    The Settlement Class Satisfies All Requirements of Rule 23(a)**

First, the Class is sufficiently numerous. In the Ninth Circuit, "classes of 40 or more are numerous enough." *Silver Wheaton*, 2017 WL 2039171, at *6. In cases involving nationally traded stocks, like Verb, where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *see also Silver Wheaton*, 2017 WL 2039171, at *6.

5

Second, the conduct alleged in the Amended Complaint was common to all members of the Settlement Class. All Settlement Class Members purchased or otherwise acquired Verb securities during the Settlement Class Period, at prices artificially inflated by Defendants' alleged misrepresentations, and were damaged when the truth was revealed. That is sufficient to show commonality.

Third, Plaintiffs' claims are typical of those of the rest of the Settlement Class. They each purchased Verb common stock during the Settlement Class Period, holding shares up to or through the end of the Settlement Class Period and suffering significant losses. *See* Dkt. Nos. 26-2 and 51-1 (Plaintiffs' PSLRA certifications). There is no evidence suggesting that Plaintiffs' claims are atypical of the Settlement Class or that any unique defenses apply to Plaintiffs' claims. *See Semtech*, 2010 WL 11507255 at *4-5 (finding typicality was met despite certain unique factors). Plaintiffs satisfy the typicality requirement.

Fourth, Plaintiffs are adequate representatives of the Settlement Class, and the Court-appointed Lead Counsel, Rosen, are adequate counsel. Plaintiffs have been diligent in monitoring this Action and supervising Lead Counsel. *See* Goldberg Dec., Exhibits 3-4 (Declarations of Plaintiffs). No evidence exists of any conflicts of interest between Plaintiffs and the other Settlement Class Members. *Silver Wheaton*, 2017 WL 2039171 at *7-8. Rosen is experienced in prosecuting similar securities fraud class actions and has skillfully litigated this Action through the pleadings stage. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *4 (C.D. Cal. May 16, 2013). Plaintiffs and Rosen thus satisfy the adequacy requirement.

**B.      The Settlement Class Satisfies All Requirements of Rule 23(b)(3)**

Class certification is warranted where common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here, as it is in most securities class actions. The root of the Action – whether Defendants made public

misrepresentations of material facts with scienter, artificially inflating the price of securities – is the central issue and predominates over any theoretical individual issue that may arise. The common resolution of these issues supports a finding of predominance. *Semtech*, 2010 WL 11507255, at *7; *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").

The class action is also the best method of resolving this Action. For certification of a settlement class, as Plaintiffs seek here, the Court is not required to analyze each superiority factor in great detail. *Amchem*, 521 U.S. at 620. A court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Id.* The Ninth Circuit has long recognized that class actions are a superior way to pursue securities fraud actions. "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Id.*

This Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3). The Court should finally certify the Settlement Class.

## IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements, imposing the following:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;
> >
> > (B) the proposal was negotiated at arm's length;
> >
> > (C) the relief provided for the class is adequate, taking into account:
> >
> > > (i) the costs, risks, and delay of trial and appeal;
> > >
> > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv) any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D) the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense,

8

complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant[3]; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, each of Rule 23(e)'s and the Ninth Circuit's factors weighs in favor of final approval of the Settlement.

### A. The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g.*, *Torrisi*, 8 F.3d at 1375–76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where, as here, the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). Even among class actions, securities actions are complex their outcomes uncertain. *Hefler v. Wells Fargo*

---

[3] Here there was no government participant, so this factor is neutral. *Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

*& Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In this Action, Lead Counsel and Plaintiffs carefully evaluated the merits of this case in light of all of the risks and potential weaknesses before Plaintiffs entered into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risk posed to the Settlement Class in continuing this action. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class ultimate recovery be less than the proposed settlement).

### 1.   Plaintiffs Faced the Risk of Dismissal

Class action plaintiffs face procedural hurdles and failing at any one stage of the litigation could defeat the class action. While Plaintiffs believe their arguments opposing Defendants' motion to dismiss are strong, there is no guarantee they would prevail before the Court. The PSLRA imposes heightened pleading burdens on complaints alleging securities fraud that are "not [] easy [] to comply with." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In their motion to dismiss, Defendants challenged whether Plaintiffs had adequately alleged the elements of falsity and scienter. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). In particular, Plaintiffs faced the risk that the Court would find that Defendants' statements about the Oracle Agreement were not actionably false or misleading, depending on how the Court interpreted Defendants' joint marketing statements. Goldberg Dec. ¶25. The Court could have also found that Defendants' alleged misrepresentations were forward-looking statements shielded by the PSLRA's safe harbor provisions. *Id.*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Plaintiffs also faced the risk that the Court would find that they had not adequately pleaded facts supporting a strong inference that Defendants acted with scienter. *Id.* ¶26. Plaintiffs must show that Defendants made false statements "intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Scienter is difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Plaintiffs also lacked the benefit of the indicia that often buttress securities fraud actions such as a government prosecution or a restatement. *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016).

Here, Plaintiffs were faced with alleging scienter through circumstantial evidence – an especially difficult task. *Ramsey v. MRV Commc'ns Inc.*, No. CV0804561GAFRCX, 2010 WL 11596641, at *3 (C.D. Cal. Nov. 16, 2010). The Court could have found that Defendants' statements were not made with knowledge, or at least reckless disregard for the risk, that the true state of affairs regarding the Oracle Agreement differed materially from Defendants' statements about it. Goldberg Dec. ¶26. The Court could also have found that Plaintiffs' allegations supporting a motive or opportunity to commit fraud were insufficient to support a strong inference of scienter. *Id.* The risk of dismissal due to the heightened pleadings standards supports approval of the Settlement.

### 2. Plaintiffs Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status Through Trial

Even if Plaintiffs defeated the motion to dismiss, they would still need to undertake the somewhat complex and expensive task of certifying the putative class. In any securities fraud class action, a plaintiff faces significant challenges to certifying a class and maintaining certification throughout trial. One of the more difficult elements to satisfy is showing that class-wide issues, such as reliance on Defendants' misrepresentations, predominate over individualized issues. Pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-

11

wide reliance, Plaintiffs would need to prove that Verb securities traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into Verb's stock price.

To meet the standards for the *Basic* presumption, Plaintiffs would have had to hire an expert economist to conduct an event study showing the price reaction of Verb securities to new, material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive. Goldberg Dec. ¶27. Defendants would also likely contest either or both the efficiency of the market for Verb securities and whether the fraud impacted the price of Verb securities. As a start-up company, Verb's shares did not trade as robustly as larger, more well-capitalized registrants. *Id.* Defendants would present their own expert report and testimony to oppose class certification. In addition to briefing the certification motion, Plaintiffs would need to produce and review documents, sit for depositions, and take the opposing expert's deposition.

Even if Plaintiffs were successful in obtaining class certification, they faced a small risk that they would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). A class is not safely certified until judgment. While rare, a change in the law or facts might upset certification. Thus, the necessity of complex and costly class certification proceedings together with the risk this Court would have denied certification, supports the Settlement's adequacy.

### 3. Plaintiffs Faced Additional Risks of Continued Litigation

Even if Plaintiffs were to defeat the motion to dismiss and successfully obtain class certification, there is no question that further litigation would be risky, complex, and expensive. First, they would need to engage in fact discovery, requiring review of thousands of documents and deposing Defendants, Verb employees, and non-parties. Goldberg Dec. ¶30. After the close of merits discovery, the parties would engage in expert discovery on the questions of loss causation and damages, and perhaps other

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

issues as well. Defendants would present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud. *Id.* ¶28. All told, expert discovery and trial preparation would prove expensive and complex. *See Heritage Bond*, 2005 WL 1594403, at *6.

Even beyond class certification, further perils await. Plaintiffs might lose on summary judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter). Plaintiffs might have an expert excluded, crippling their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs might also lose at trial, or the jury might trim Plaintiffs' damages significantly. *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict (reporting that according to defendants, plaintiffs won only 5% of the damages they requested).[4] Plaintiffs might still lose their case in this Court even after winning at trial. *See, e.g.,  In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor). Even if Plaintiffs survive summary judgment and motions to exclude their experts, win at trial, secure a verdict for their damages, and then defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict).

---

[4] *Available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Accordingly, the likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. *See Officers for Justice*, 688 F.2d at 625 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

**B.      The Amount Obtained in Settlement Supports Final Approval**

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, Plaintiffs cannot be sure they will be able to secure or enforce a judgment at or near the full amount of the class-wide damages they estimate. In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459.

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The estimated damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiffs were to prevail on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See e.g.,*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

*Hubbard*, 688 F.3d at 716 (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiffs carefully considered the significant risk that they would be unable to recover a greater amount further down the road.

The Settlement locks in a substantial benefit for Settlement Class Members. The $640,000 Settlement recovers almost half of the $1.4 million in Plaintiffs' maximum estimated class-wide damages under a more conservative damages calculation. If they had continued to litigate, Plaintiffs would have pursued the most aggressive damages calculation possible, under which damages could have been as high as $13.85 million. This approach, however, relied on a legal theory that would be materially more difficult to prove in an efficient market, based on multi-day loss causation and the absence of expected news. Goldberg Dec. ¶28. Between 2010 and 2018, cases with maximum damages of less than $25 million, like this one, settled for a median of 17.9% of total damages. In 2019, the median recovery of potential damages was 18.8%. Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2019 Review and Analysis*, at 6 (Cornerstone Research 2020).[5] Thus, the Settlement's recovery of approximately 46% of the more likely damages scenario recovers more than twice the proportion of damages as the median settlement.

Further, the Settlement recovers 4.6% of what Plaintiffs' estimate of the absolute best-case provable class-wide damages of $13.85 million. 4.6% is still well within the range of the percentage of investor losses recovered in securities class action settlements. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *Heritage Bond*, 2005 WL 1594403, at *8–*9 (average recovery between 2% to 3% of maximum damages)); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"). In

---

[5] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

the context of questions about collectability, therefore, the Settlement Amount in this case is fair, reasonable, and adequate.

**C.     The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval**

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

During the PSLRA-mandated discovery stay, Lead Counsel thoroughly reviewed both Verb's public filings and statements during the Class Period and other publicly available news reports and information relating to Verb and to Oracle. Goldberg Dec. ¶35. Through its thorough investigation, Lead Counsel determined the scope of the claims Plaintiffs could bring on behalf of the putative class, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions, synthesizing these critical facts into a compelling Amended Complaint. *Id.* Lead Counsel also reviewed Defendants' motion to dismiss, researching the applicable law to draft and file Plaintiffs' opposition. *Id.* ¶36. As part of confidential settlement negotiations, on a strictly confidential basis, Defendants provided to Plaintiffs certain non-public financial information and Verb's insurance policy. In addition, on a strictly confidential basis Defendants provided certain non-public, internal documents, relating to the facts of the case. So informed, Plaintiffs were better able to judge the strength of their claims after the April 23, 2018 disclosure, the

16

adequacy of the Settlement Amount in relation to the damages through April 23, 2018, and the fairness and adequacy of the Plan of Allocation. *Id.* ¶35.

Through these efforts, Plaintiffs and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation. *Id.* Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) (before class certification); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *7 (N.D. Cal. Apr. 25, 2016) (no discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (before decision on motion to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, the Parties reached the Settlement after Plaintiffs had filed their Amended Complaint, reviewed Defendants' motion to dismiss, and filed their opposition. Through the motion to dismiss briefing and months of settlement negotiations that included Defendants providing certain financial information on a strictly confidential

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

basis, Plaintiffs and Lead Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015). Plaintiffs and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a favorable Settlement, supporting final approval.

### D.     The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it results from arms'-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining").

Here, Plaintiffs reached the Settlement only through several months of arm's-length negotiations. Goldberg Dec. ¶13. The Parties discussed settlement even as they continued to litigate Defendants' motion to dismiss. *Id.* Lead Counsel also kept a close eye on Verb's evolving financial situation, which was a key factor in the settlement negotiations. As noted in Plaintiffs' preliminary approval brief, no hint of collusion exists here. There is no "clear sailing" agreement and the Settlement was achieved only after protracted negotiations between counsel.

In addition to the vigorous settlement negotiations, counsel on both sides are experienced and knowledgeable when it comes to litigating complex, securities class actions. The opinion of experienced counsel supporting the settlement is "entitled to considerable weight." *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

Rosen's experience and reputation allowed it to credibly threaten further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. Numerous courts have recognized that Rosen "has the necessary skill

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."). Thus, Lead Counsel's experience supports approval.

In considering final approval of the Settlement the Court should give Lead Counsel's views material weight. *See* Goldberg Dec. ¶¶14-15. In a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9.

Finally, Plaintiffs' support for the Settlement is further evidence that the Settlement is fair, reasonable and adequate. *See* Goldberg Dec., Exhibits 3-4 (Declarations of Plaintiffs). Plaintiffs' support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). The protracted arms' length negotiations and the opinion of experienced counsel and the Plaintiffs support final approval of the Settlement.

### E.     The Reaction of the Settlement Class Supports Approval

The absence of many objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*,

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

The Claims Administrator mailed 2,426 copies of the Postcard Notice to potential Settlement Class Members. Evans Dec. ¶7. Three nominees also informed the Claims administrator that they had emailed 4.701 customers to notify them of the Settlement, including direct links to the Notice and Claim Form on the settlement website. *Id.* The deadline to file objections to and request exclusion from the Settlement is January 28, 2021. To date, no Settlement Class Members have objected to the Settlement or validly requested exclusion from it. Evans Dec. ¶¶12-13; Goldberg Dec. ¶17. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 459 (that there was only one opt-out supports upholding district court's approval of settlement). The lack of objections or requests for exclusion supports final approval.

**F.      The Settlement Meets the Remaining Rule 23(e)(2) Factors**

**1.      The Proposed Method for Distributing Relief Is Effective**

The Court's Preliminary Approval Order established a plan to provide notice to Class Members, which Plaintiffs and the Claims Administrator duly followed. As the Court directed in the Preliminary Approval Order, the Claims Administrator mailed a postcard to all those who could be identified with reasonable effort, supplemented by the online publication of the Summary Notice on *Globe Newswire*. Evans Dec. ¶9. The postcard notified Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims Administrator posted key documents including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.* ¶11.

Class Members completed a standard claim form that requests the information necessary to calculate their claim amount pursuant to the Plan of Allocation. The case-

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

specific website also allowed Class Members to file their claims electronically without ever having to print, scan, mail, or email any document.

### 2.    The Attorneys' Fees Are Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, plus interest, and expenses of $17,264.10. This fee request, fully disclosed in the Postcard Notice, Summary Notice, and Notice, is lower than that awarded in many other settlements approved in the Ninth Circuit. *See* Fee Brief, part III(C)(6).

Plaintiffs also request $1,000 each pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Class. Courts regularly permit similar or larger awards to named plaintiffs. Fee Brief, part V. Plaintiffs supervised and engaged with Lead Counsel during the pleading stage and throughout settlement negotiations, and kept abreast of developments in this case and with Verb generally. They are skilled professionals who spent significant amounts of time working with Lead Counsel on this Action. *See* Goldberg Dec., Exhibits 3-4 (declarations of Plaintiffs). They deserve compensation for the time they have dedicated to representing the Settlement Class.

### 3.    The Parties Have No Other Agreements Besides Opt-Outs

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). The Supplemental Agreement the Parties filed under seal with the Court (Dkt. No. 73) gives Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain number of damaged shares opt out. Plaintiffs disclosed the agreement and its essential terms in the Stipulation (¶10.3) and in Plaintiffs' preliminary approval brief (Dkt. No. 66-1 at 16-17). It is only the supplemental agreement's exact terms—specifically, the number of shares that will trigger the right to terminate—that the parties have not disclosed to Settlement Class Members. This Supplemental Agreement poses no

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

obstacle to final approval of the Settlement. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

**4. There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably**

The Plan of Allocation will determine how the money is distributed between Authorized Claimants. The Settlement Fund is distributed *pro rata* to each Settlement Class member based on their recognized losses resulting from the stock price declines between April 23, 2018 and May 2, 2018 in response to the corrective disclosures. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their maximum recoverable damages. Goldberg Dec. ¶20. It thus tracks Plaintiffs' theory of the case. The Plan of Allocation will determine Plaintiffs' recoveries just like every other Settlement Class Member, so they receive no preferential treatment.

**G. The Court Should Approve the Plan of Allocation**

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation outlined therein. Plaintiffs now request that the Court grant final approval of the Plan of Allocation for the purpose of administering the Settlement. Courts judge plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan of Allocation has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Verb securities. Plaintiffs engaged a damages consultant to assist in developing a plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Settlement Class Members in a fair and reasonable manner. Goldberg Dec. ¶20. *See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognize loss as calculated in accordance with the Plan of Allocation detailed in the Notice. Goldberg Dec. ¶¶21-22.

There have been no objections and no exclusion requests from any potential Settlement Class Members, further supporting approval of the Plan of Allocation. Evans Dec. ¶¶12-13; Goldberg Dec. ¶17. The Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## V.     NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS

Plaintiffs have provided the Settlement Class with adequate notice of the Settlement, in the manner and form directed and preliminarily approved by the Court. Plaintiffs, through Lead Counsel and the Claims Administrator, mailed more than 2,400 copies of the Court-approved Postcard Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Evans Dec. ¶7. Three nominees sent nearly twice as many email notifications to their customers, including direct links to the Notice and Claims form on the Settlement

website. *Id.* In addition, the Claims Administrator published the Court-approved Summary Notice online in *Globe Newswire* on November 11, 2020. *Id.* ¶9. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶11. This method of giving notice is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim forms under the Plan of Allocation as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI.   CONCLUSION

For the foregoing reasons, the Court should: (a) finally certify the Settlement Class; (b) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: January 12, 2021

**THE ROSEN LAW FIRM, P.A.**

*/s/ Jacob A. Goldberg*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jacob A. Goldberg (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
        jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2021, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL