Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jacob A. Goldberg (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
        jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT C. HARTMANN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VERB TECHNOLOGY COMPANY, INC., and RORY J. CUTAIA, <br><br> Defendants. | No. 2:19-cv-05896-GW-MAA <br><br> <u>CLASS ACTION</u> <br><br> **DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS** |

1

DECLARATION OF JACOB A. GOLDBERG

BUMJIN KIM, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERB TECHNOLOGY COMPANY, INC., and RORY J. CUTAIA,

Defendants.

No. 2:19-cv-06944-GW-MAA

CLASS ACTION

2

I, Jacob A. Goldberg, declare as follows:

1.    I am an attorney duly licensed to practice law in Pennsylvania and New York, and I have been admitted *pro hac vice* in this Action. I am a partner of The Rosen Law Firm, P.A. ("Rosen"), Lead Counsel for Plaintiffs in this Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.    I submit this declaration in support of Plaintiffs' Motions for: (1) final approval of the proposed Settlement of this Action; and (2) an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs, filed concurrently herewith.[1] This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Rosen's requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable and should be approved by the Court.

3.    The Settlement creates a gross settlement fund of $640,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, awards to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons who purchased Verb common stock between January 3, 2018 and May 2, 2018, both dates inclusive.[2]

4.    The memoranda in support of Plaintiffs' motions, filed herewith, set out the complete narrative of this case. The purpose of this declaration is to attest to certain

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement dated September 17, 2020, ECF No. 66-3 ("Stipulation" or "Settlement").

[2] Excluded from the Settlement Class are all: (i) Defendants and all officers and directors of Verb during the Settlement Class Period; (ii) immediate family members of any Person excluded under section (i) of this definition; (iii) any entities affiliated with or controlled by any person excluded under sections (i) and (ii) of this definition; (iv) the legal representatives, heirs, successors or assigns of any person excluded under subsections (i) through (iii) of this definition; and (v) Opt-Outs.

DECLARATION OF JACOB A. GOLDBERG

facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5.      Scott Hartmann commenced this action on July 9, 2019, alleging violations of the Securities Exchange Act of 1934. Dkt. No. 1.

6.      On October 7, 2019, after briefing on motions for lead plaintiff and lead counsel, the Court appointed J. Leister as Lead Plaintiff and Rosen as Lead Counsel. Dkt. No. 42.

7.      On December 3, 2019, Plaintiffs filed the operative Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") against Defendants. Dkt. No. 51. The Parties began to discuss settlement around the time that Plaintiffs filed their Amended Complaint.

8.      On February 28, 2020, Defendants filed their motion to dismiss the Amended Complaint. Dkt. No. 55.

9.      On April 10, 2020, Plaintiffs filed their opposition to Defendants' motion to dismiss. Dkt. No. 56.

10.      In light of the ongoing settlement negotiations, the Parties stipulated to extend the time for Defendants to file their reply in support of their motion to dismiss to preserve resources for settlement, and to allow sufficient time for the Parties to finalize the Stipulation. Dkt. No. 58.

11.      The Parties reached an agreement to settle the Action on September 17, 2020. Dkt. No. 66-3.

12.      On October 28, 2020, the Court entered an order preliminarily approving the Settlement and directing the provision of notice. Dkt. No. 75.

## II.      OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

13.      Counsel for the Parties began settlement discussions shortly after Plaintiffs filed the Amended Complaint. Settlement discussions continued between counsel as the Parties briefed Defendants' motion to dismiss. After Plaintiffs filed their

DECLARATION OF JACOB A. GOLDBERG

opposition to Defendants' motion to dismiss, the Parties were close enough to resolving the Action that they agreed to continue the deadline for Defendants to file their reply brief. After protracted, arms' length negotiations over the details of the Settlement, which included multiple rounds of negotiation over both the amount and duration of Verb's payments, including payment duration not typical of most securities class action settlements, the Parties finally entered the Stipulation.

14. In the opinion of the team of lawyers at my firm who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

15. As set forth herein and in the accompanying memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), the Settlement represents between approximately 4.6% and approximately 46% of Plaintiffs' estimate of recoverable damages – should all the claims alleged survive to trial, should a class be certified, should a jury adopt the expert damages model of Plaintiffs, and should Defendants have the ability to pay such a judgment. A guaranteed cash settlement that provides a substantial benefit in the face of these challenges – not to say anything of the appeals that would likely be filed should Plaintiffs prevail – is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations by experienced counsel, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

16. For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 25% of the Settlement Fund, or $160,000, plus interest earned thereon, and reimbursement of litigation expenses. This fee request

5

DECLARATION OF JACOB A. GOLDBERG

is within the reasonable range of percentages typically awarded in securities class actions in the Ninth Circuit.

17.     The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the Notice, exclusion requests and objections to the Settlement must be received by January 28, 2021. To date, neither Rosen nor the Claims Administrator have received any requests for exclusion or objections to any aspect of the Settlement. *See* Declaration of Sarah Evans Concerning (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Evans Dec.") ¶¶12-13.[3] If Rosen or the Claims Administrator receives any objection or exclusion request, Plaintiffs will address them in their reply papers in support of final approval.

## III.    NOTICE PROCEDURES

18.     At Lead Counsel's direction, and pursuant to the Court's Preliminary Approval Order, on November 11, 2020, Strategic Claims Services ("SCS" or "Claims Administrator") published the Summary Notice on the *Globe Newswire*. Evans Dec. ¶9. The Claims Administrator also published the Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on November 11, 2020. *Id.* ¶11.

19.     To date, SCS has mailed 2,426 Postcard Notices to potential Class Members. *Id.* ¶7. SCS also contacted more than a thousand brokerage firms and other institutions believed likely to have names and addresses of potential Class Members to alert them of the Settlement or provide SCS with their contact information to mail Postcard Notice. *Id.* ¶5. Further, three nominees notified SCS that they emailed a total of 4,701 Postcard Notices to their customers, notifying them of the Settlement and

---

[3] A true and correct copy of the Evans Dec. is attached hereto as Exhibit 1.

DECLARATION OF JACOB A. GOLDBERG

providing direct electronic links to the Notice and Claim Form on SCS's website. *Id.* ¶7.

## IV.   PLAN OF ALLOCATION

20.   Pursuant to the Preliminary Approval Order, the Notice fully described the proposed Plan of Allocation. *See* Dkt. No. 66-6 (proposed Notice) at 10-15. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

21.   If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

22.   The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## V.   THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

23.   The proposed Settlement is the culmination of careful, economical litigation followed by protracted arms' length settlement negotiations. The parties reached the Settlement after Lead Counsel had thoroughly investigated the case and

DECLARATION OF JACOB A. GOLDBERG

filed the operative Amended Complaint, consulted with a damages expert, and opposed Defendants' motion to dismiss.

24.     Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial, the Company's financial position, and other factors related to collectability of any settlement or judgment. Plaintiffs faced multiple procedural hurdles and significant merit-based risks involved with protracted litigation. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

25.     Although Lead Counsel believe Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat Defendants' motion to dismiss. Defendants challenged whether Plaintiffs had adequately alleged the elements of falsity and scienter. Plaintiffs faced the risk that the Court may have found that Defendants' statements about the Oracle Agreement were not actionably false or misleading, or that they were forward-looking statements shielded by the PSLRA's safe harbor provisions.

26.     Plaintiffs also faced the risk that the Court would find they had not adequately pleaded a strong inference of scienter. The Court may have found that Plaintiffs did not adequately allege that Defendants' statements were not made with the requisite mental state. The Court could also have found that Plaintiffs' motive and opportunity allegations were insufficient to show scienter.

27.     Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency. This is no guarantee as Verb was an early stage company whose shares did not trade as robustly as larger, more well-capitalized registrants during the relevant time period. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of

8

DECLARATION OF JACOB A. GOLDBERG

Plaintiffs' expert over Defendants' expert. Based on Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover their damages from purchasing Verb securities as it would be uneconomical for them to bring individual cases.

28. Plaintiffs also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiffs calculated that damages ranged between $1.4 million and $13.85 million, depending on how aggressive the calculation, assuming they prevailed on all their claims. If they had continued to litigate, Plaintiffs would have pursued the most aggressive damages calculation possible, under which damages could have been as high as $13.85 million. This approach relied on a legal theory that would be much more difficult to prove in an efficient market, based on multi-day loss causation and the absence of expected news. Defendants would, of course, contend that damages are lower, or zero. Based on Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

29. The Settlement provides for Defendants to make monthly payments over twelve months to fully fund the Settlement Amount. This was a necessary concession by Plaintiffs because of Verb's status as a start-up company that was dependent on outside financing for continued operations, as Plaintiffs alleged in their Amended Complaint. Considering Verb's financial situation at the time of the Settlement, Verb will pay the Settlement Amount in twelve monthly payments, secured by shares of common stock that Verb deposited into escrow. In Lead Counsel's view, the unusual delay in obtaining full payment was a fair and reasonable trade-off, locking in a favorable Settlement Amount that recovered a fair, adequate, and reasonable portion of estimated damages. Lead Counsel will receive no payment of any attorneys' fees

9

DECLARATION OF JACOB A. GOLDBERG

awarded whatsoever until the Settlement Amount is fully funded and available for distribution to the Settlement Class.

30.     Discovery would also be costly and time consuming. Plaintiffs would likely need to review thousands of documents and take several depositions of Defendants, Verb employees, and third parties. Further, since the Class Period began in 2018 and depositions would not start until at least well into 2021, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony.

31.     Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

## VI.    THE FEE APPLICATION IS FAIR AND REASONABLE

32.     The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $25,000. Evans Dec., Ex. D. As set forth in the Memorandum in support of Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs, filed herewith ("Fee Brief"), 25% of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted.

33.     Lead Counsel achieved a favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class' claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

DECLARATION OF JACOB A. GOLDBERG

*Lead Counsel's Work and Expertise*

34.    Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

35.    During the PSLRA-mandated discovery stay, Lead Counsel reviewed Verb's public filings and statements during the alleged Class Period, as well as other news reports and public information relating to Verb. As part of confidential settlement negotiations, on a strictly confidential basis, Defendants provided to Plaintiffs certain non-public financial information and Verb's insurance policy. In addition, on a strictly confidential basis Defendants provided certain non-public, internal documents, relating to the facts of the case. So informed, Plaintiffs were better able to judge the strength of their claims after the April 23, 2018 disclosure, the adequacy of the Settlement Amount in relation to the damages through April 23, 2018, and the fairness and adequacy of the Plan of Allocation. Through its investigation, Lead Counsel determined the scope of the claims Plaintiffs could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Ultimately, Lead Counsel ably synthesized these facts into a compelling Amended Complaint.

36.    Lead Counsel also reviewed Defendants' motion to dismiss, researched the applicable law, and drafted and filed Plaintiffs' opposition. As a result of these efforts, Plaintiffs and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

37.    The total amount of time expended by attorneys and professional staff employed by Lead Counsel is 354.45 hours. This number is derived from the time records Rosen regularly maintained. A listing of the professionals at Rosen who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee

DECLARATION OF JACOB A. GOLDBERG

Declaration") ¶5.[4] The total value of the services performed in this case by Rosen, based upon our current rates, is $266,841.25.

38.    If Lead Counsel's request of 25% of the Settlement as attorneys' fees is granted, Lead Counsel would receive a fee of $160,000. This fee award would represent a lodestar multiplier of approximately 0.60. This fractional multiplier is materially below other multipliers that courts in this Circuit typically awarded in securities class actions.

39.    As reflected in the firm's resume, Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. *See* Rosen's Firm Resume, attached to the Rosen Fee Declaration as Exhibit A.

40.    Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

***The Caliber of Opposing Counsel***

41.    Wilson Sonsini Goodrich & Rosati, P.C., represented Defendants. Wilson Sonsini is a respected defense firm with substantial securities litigation experience and resources. Defendants' counsel zealously advocated for their clients. In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade the Defendants to settle it on terms that were favorable to the Class.

---

[4] A true and correct copy of the Rosen Fee Declaration is attached hereto as Exhibit 2.

DECLARATION OF JACOB A. GOLDBERG

*The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases*

42.     Lead Counsel undertook this class action on a contingency fee basis. I summarize above and further describe in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

43.     Those risks are also relevant to an award of attorneys' fees. I describe in detail above and in the Fee Approval Brief the risks Lead Counsel assumed and the time and expenses it incurred without any payment.

44.     From the outset, Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Lead Counsel has received no compensation during the course of this litigation, pending since mid-2019.

45.     The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

46.     As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsels' efforts and the favorable result achieved, I believe that a 25% fee is reasonable and that the Court should approve it.

*The Reaction of the Class to the Requested Fee*

47.     As noted above, the Claims Administrator disseminated or caused to be disseminated over 7,000 Postcard Notices to potential Settlement Class members pursuant to the Court's Preliminary Approval Order. Evans Dec. ¶7.

48.     The deadline for exclusion requests and objections is January 28, 2021. To date, neither Lead Counsel nor the Claims Administrator has received any exclusion

13

DECLARATION OF JACOB A. GOLDBERG

requests or objections to any aspect of the Settlement, including the requested attorneys' fees. *See* Evans Dec., ¶¶12-13.

## VII.   REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

49.   Lead Counsel have incurred $17,264.10 in litigation expenses in connection with the prosecution of the Action. These expenses were reasonable and necessary for the prosecution of the Action.

50.   From the outset counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

51.   A listing of the expenses incurred by Rosen compiled from the regularly maintained records, are set forth in the Rosen Fee Declaration, ¶7. The expenses incurred pertaining to this case are reflected in Rosen's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court.

52.   Litigation expenses for which Lead Counsel seeks reimbursement included expert consultant fees, travel expenses, legal research fees, document retrieval fees, and filing fees. Each of these expenses were reasonable and necessary for the successful prosecution of this case. The financial expert performed a damages analysis so that Lead Counsel could properly evaluate and negotiate the Settlement.

53.   In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.

14

DECLARATION OF JACOB A. GOLDBERG

## VIII. NOMINAL AWARDS TO PLAINTIFFS ARE WARANTED

54.    Plaintiffs each seek awards of $1,000 for their time and effort overseeing this action pursuant to the PSLRA. The declarations of Lead Plaintiff J. Leister and Named Plaintiff Alexander Wolfson outline the time they devoted to this litigation, including filing a lead plaintiff motion, review of pleadings, communicating regularly with counsel, and discussing the Settlement with counsel.[5] Plaintiffs have been actively involved and put the concerns of the Class at the forefront.

55.    As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

56.    The awards to Plaintiffs, totaling $2,000, are fair and reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 12, 2021.

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg

---

[5] A true and correct copy of the Declaration of J. Leister is attached hereto as Exhibit 3. A true and correct copy of the Declaration of Alexander Wolfson is attached hereto as Exhibit 4.

DECLARATION OF JACOB A. GOLDBERG

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2021, I electronically filed the foregoing Declaration of Jacob A. Goldberg in Support of Plaintiffs' Motions for Final Approval of Proposed Class Action Settlement and Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg

DECLARATION OF JACOB A. GOLDBERG