Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jacob A. Goldberg (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
        jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT C. HARTMANN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERB TECHNOLOGY COMPANY, INC., and RORY J. CUTAIA,<br><br>Defendants. | No. 2:19-cv-05896-GW-MAA<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS**<br><br>Date: February 18, 2021<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

BUMJIN KIM, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERB TECHNOLOGY COMPANY, INC., and RORY J. CUTAIA,

Defendants.

No. 2:19-cv-06944-GW-MAA

CLASS ACTION

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     CASE BACKGROUND.............................................................................3

III.    THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE COMMON FUND..................................................................................3

        A.     Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class .....................................................3

        B.     The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund............................................................................................4

        C.     The Requested Attorneys' Fees are Reasonable and Merited .................5

                1.     Lead Counsel Achieved a Fair, Adequate, and Reasonable Result for the Settlement Class ................................................................6

                2.     The Risks and Complexity of the Litigation Support the Requested Fee Amount...............................................................7

                3.     Lead Counsel Skillfully Managed This Case Against Formidable Adversaries ...........................................................................9

                4.     Lead Counsel Undertook a Significant Financial Risk ...............10

                5.     Fee Awards in Similar Cases Further Support an Award of 25% of the Settlement Fund...........................................................11

                6.     A Lodestar Crosscheck Shows the Requested Fee Is Reasonable ..................................................................................12

                7.     The Settlement Class's Reaction Supports the Requested Fee Award....................................................................................14

IV.     LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED........................15

V. THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFFS ....... 16

VI. CONCLUSION ............................................................................................ 17

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

## TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...................................................................................8

*Atlas v. Accredited Home Lenders Holding Co.*,
  No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) .............5

*Blum v. Stenson*,
  465 U.S. 886 (1984)..............................................................................................4, 12

*Cheng Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).........9

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........11

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*,
  No. CV-10-3873-JST RZX, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) .............17

*Destefano v. Zynga, Inc.*,
  No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)......................8

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .................................................................................2

*Feller v. Transamerica Life Ins. Co.*,
  No. 16CV01378CASGJSX, 2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) .............14

*Fox v. Vice*,
  563 U.S. 826 (2011)................................................................................................12

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009)..............................................................................5

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ......................................................................................15

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ............................................................................17

iii

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..................................................................................................6

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989)........................................................................4

*In re Am. Apparel, Inc. S'holder Litig..*,
No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014)
..................................................................................................................9, 11, 12

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)......13

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012).............13

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012)......................................................................8

*In re Brooktree Sec. Litig.*,
915 F. Supp. 193 (S.D. Cal. 1996)...........................................................................4

*In re China Educ. All., Inc.*,
No. 210CV09239CASJCX, 2013 WL 12157112 (C.D. Cal. Mar. 11, 2013).........11

*In re Corel Corp. Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003).......................................................................8

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) .....................................................................12

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011)..........................................................................6, 7

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..............passim

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX),
2005 WL 1594389 (C.D. Cal. June 10, 2005)......................................................7, 10

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) .................................................................................6

iv

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................... 15

*In re Nuvelo, Inc. Sec. Litig.*,
  No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ....................... 11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... passim

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ........................................................................................ 7

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ....................................................................................... 5

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................... 16, 17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................... 13

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ......................................................................... 3, 4, 7, 10

*Johnson v. US Auto Parts Network, Inc.*,
  No. CV07-2030-GW(JCX), 2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) .............. 7

*Katz v. China Century Dragon Media, Inc.*,
  No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) . 12, 15

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................................... 9

*Lopez v. Youngblood*,
  No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................ 4

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) .............................................................................. 15

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .............. 9

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................................. 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ............................................................................... 3, 5

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................. 10

*Roberti v. OSI Sys., Inc.*,
  No. CV1309174MWFMRW, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)..... 13, 14

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ................... 5

*Romero v. Producers Dairy Foods, Inc.*,
  No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)................. 11

*Sawant v. Ramsey*,
  No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012) ................... 10

*Singer v. Becton Dickinson & Co.*,
  No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010)............ 11

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................................. 3

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ................................................................................... 4

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ................................................................................... 3

*Vinh Nguyen v. Radient Pharm. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............... 9

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................. 4, 5, 7, 12

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................................4

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...............8

**Statutes**

15 U.S.C. § 78u-4(a)(4) ........................................................................................16

15 U.S.C. § 78u-4(a)(6) ..........................................................................................4

**Other Authorities**

H.R. Conf. Rep. No. 369...........................................................................................16

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

Lead Plaintiff J. Leister and Named Plaintiff Alexander Wolfson ("Plaintiffs") submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.

## I.    INTRODUCTION

The Parties reached a Settlement to resolve this Action for $640,000.[1] The Settlement is a favorable result, as it recovers between 4.6% and 46% of recoverable damages despite significant risk.[2] Having achieved this guaranteed cash recovery for the Settlement Class, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, or $160,000, reimbursement of expenses incurred of $17,264.10, and Awards to Plaintiffs of $1,000 each, or $2,000 in total to be paid from the Settlement Amount.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The main factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the settlement class's reaction. Courts also cross-check the award against the time and effort counsel expended. Here, each of these

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement dated September 17, 2020 ("Settlement") (Dkt. No. 66-3). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Goldberg Dec." are to the Declaration of Jacob A. Goldberg, filed herewith. Citations to "Evans Dec." are to the Declaration of Sarah Evans, attached as Exhibit 1 to the Goldberg Dec. Citations to "Rosen Fee Dec." are to the Declaration of Laurence Rosen, attached as Exhibit 2 to the Goldberg Dec. Citations to "Final Approval Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' motion for final approval of the Settlement, filed herewith.

[2] Under an aggressive damages analysis, the recovery is approximately 4.6% of damages, and under a more conservative damages analysis, the recovery is approximately 46% of damages.

1

metrics weighs in favor of awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

The Parties reached the Settlement only after protracted negotiations. The arm's-length negotiations resulted in the favorable Settlement. This Settlement is particularly beneficial to the Settlement Class Members in light of several obstacles Plaintiffs faced, including: the amount of potentially recoverable damages; Defendants' potential defenses; the risks of prosecuting this litigation through trial; and potential barriers to recovery relating to the collectability of a judgment.

In obtaining this result, Lead Counsel took on substantial risk. The Private Securities Litigation Reform Act ("PSLRA") imposes procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks, however, Lead Counsel was able to obtain this fair, adequate, and reasonable recovery for the Settlement Class.

The Settlement Class approves of Lead Counsel's work. Objections and requests for exclusion are not due until January 28, 2021, but to date no Settlement Class Member has objected to the fee request, or any aspect of the Settlement, and no Settlement Class Member has requested exclusion from the Settlement. *See* Evans Dec. ¶¶12-13; Goldberg Dec. ¶17.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $17,264.10. These expenses, including court filings fees, expert fees, travel expenses and administrative expenses, were reasonable and necessary for the successful prosecution of the Action.

Finally, Plaintiffs seek awards of $1,000 each for their time spent in carrying out their obligations in the Action. The total award of $2,000 is reasonable in light of the time Plaintiffs have spent in connection with this Action on behalf of investors, and in line with awards granted in similar matters.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

## II.   CASE BACKGROUND

A summary of Plaintiffs' allegations and the procedural history of this Action are set forth in the Final Approval Brief, Part II, filed concurrently herewith.

## III.   THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE COMMON FUND

### A.   Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and one is necessary here for the same reasons.

3

**B.** **The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund**

Under the "common fund doctrine" a reasonable fee may be based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). District courts in the Ninth Circuit have discretion to award fees in common fund cases based on either the "lodestar/multiplier" method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1295-96. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Among other benefits, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method also "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). The percentage method also preserves judicial resources by sidestepping time-consuming lodestar analysis while saving the Settlement Class from the delays necessitated by the Court's review. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("the lodestar method is difficult to apply [and] time consuming to administer.").

Finally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell,*

4

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

*Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons the Court should award attorneys' fees based on the percentage-of-recovery method. The Court should use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 (using lodestar as "a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

## C.    The Requested Attorneys' Fees are Reasonable and Merited

While this Court has discretion to set the percentage of the common fund to award as attorneys' fees, 25% is a "starting point." *See Vizcaino*, 290 F.3d at 1047–48. This Court may adjust the percentage "to account for any unusual circumstances involved in this case." *Graulty*, 886 F.2d at 272. Here, Lead Counsel requests 25%.[3]

Factors that courts use to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino*, 290 F.3d at 1047; *Omnivision*, 559 F. Supp. 2d at 1046. Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). Here, each of these factors supports awarding attorneys' fees of 25% of the common fund.

---

[3] Courts award higher fee percentages in smaller settlements. *See Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *4–5 (N.D. Cal. Aug. 23, 2018) (awarding 28%, discussing studies showing decrease in fee percentages as settlement amount increases).

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

### 1.    Lead Counsel Achieved a Fair, Adequate, and Reasonable Result for the Settlement Class

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery").

The Settlement value, totaling $640,000 in cash, plus interest, constitutes between 4.6% and 46% of Plaintiffs' estimated damages. Had they continued to litigate Plaintiffs would have pursued the most aggressive damages approach, under which Plaintiffs contend that damages could have been as high as $13.85, but this calculation relied on a much more difficult legal theory based on multi-day loss causation and the absence of expected news, as opposed to a concrete corrective disclosure. Goldberg Dec. ¶28. Under the more conservative, less speculative approach, Plaintiffs' view of maximum estimated damages was approximately $1.4 million. The Settlement provides a reasonable recovery under either analysis. As a percentage of the total estimated damages, the Settlement Amount is above the median percentage of investor losses recovered recovery level in securities class action settlements. *Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005). (average recovery between 2% to 3% of maximum damages)); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses").

According to Cornerstone Research, between 2010 and 2018, cases such as this one that are brought under rule 10b-5 with potential damages under $25 million recovered a median of 17.9% of maximum potential damages. In 2019, the median recovery of potential damages was 18.8%. Laarni T. Bulan, and Laura E. Simmons,

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

Cornerstone Research, *Securities Class Action Settlements—2019 Review and Analysis*, at 6.[4] The recovery here is in line with—and by the more conservative damages estimate, exceeds—the median percentage of recovery for cases of similar size over the past decade.

The Settlement provides for Defendants to make monthly payments over twelve months to fully fund the Settlement Amount. This was a necessary concession by Plaintiffs because of Verb's reliance on outside financing for continued operations, as Plaintiffs alleged in their Amended Complaint. Goldberg Dec. ¶29. Considering Verb's financial situation at the time of the Settlement, Verb will pay the Settlement Amount in twelve monthly payments, secured by shares of common stock that Verb deposited into escrow. *Id.* In Lead Counsel's view, the unusual delay in obtaining full payment was a fair and reasonable trade-off, locking in a favorable Settlement Amount that recovered a fair, adequate, and reasonable portion of estimated damages. *Id.* Lead Counsel will receive no payment of any attorneys' fees awarded whatsoever until the Settlement Amount is fully funded and available for distribution to the Settlement Class. *Id.*

### 2. The Risks and Complexity of the Litigation Support the Requested Fee Amount

The risks and complexity of the litigation are important factors in determining a fee award. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fees were justified "because of the complexity of the issues and the risks."); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance"); *WPPSS,* 19 F.3d at 1299-1301.

Securities class actions are often complex, difficult to prove, and risky. *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005). As this Court has noted, "a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action." *Johnson v. US Auto*

---

[4] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis. (Last viewed January 12, 2021).

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

*Parts Network, Inc.*, No. CV07-2030-GW(JCX), 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (Wu, J.) (collecting cases). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). For these reasons, among others, fee awards in securities class actions commonly meet or exceed the 25% benchmark. *Omnivision*, 559 F. Supp. 2d at 1047.

Plaintiffs' Final Approval Brief more fully sets out the risks Plaintiffs would continue to face had they continued the litigation. Final Approval Brief, part IV(A).

The most immediate risk was that Plaintiffs' claims were subject to the PSLRA's stringent pleading standards. As a court observed in dismissing securities claims brought against BP following the Deepwater Horizon disaster, "[t]he Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). "Legal precedents are continually making it more difficult to plead securities class actions," so courts have awarded higher fees in securities actions. *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016).

Plaintiffs also did not benefit from other advantages securities class action plaintiffs frequently have. Here, no government investigation of securities claims, cooperating witness, or accounting restatement gave Plaintiffs confidence that the case had merit and a roadmap on how to plead and prove one. *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (higher fee was warranted because "there was no government investigation or accounting restatement—ordinarily, hallmarks of securities fraud that might suggest a case has merit."); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 492 (E.D. Pa. 2003) (risk of litigation "is exacerbated [because] plaintiffs would have had to establish their case almost exclusively through documents and the testimony of hostile witnesses").

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

### 3.   Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The skill required to litigate the case and the quality of work performed support a high fee award. "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019); *In re Am. Apparel, Inc. S'holder Litig..*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (similar).

The Court-appointed Lead Counsel, The Rosen Law Firm, P.A. ("Rosen"), have amassed the skills and experience needed to prosecute this case through decades of experience litigating and successfully settling more than one hundred securities class actions. Goldberg Dec. ¶39. They have shown they are willing and able to litigate a case to resolution. *See, e.g., Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"); *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement). Rosen applied the same skill and determination to litigating this Action to a favorable resolution.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at *20. Here, Defendants retained Wilson Sonsini Goodrich & Rosati, P.C., one of the world's

9

premier law firms with an exemplary securities practice. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients. Goldberg Dec. ¶41. That Lead Counsel achieved a favorable Settlement in the face of such formidable opposition weighs in favor of the requested fee.

### 4. Lead Counsel Undertook a Significant Financial Risk

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage Bond*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Contingency fee risk is not illusory. In many cases, plaintiffs' attorneys invest thousands of hours and receive no remuneration whatsoever. There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Since the PSLRA was enacted, a high percentage of securities cases have been dismissed at the pleading stage. The risks do not end at the motion to dismiss stage. In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). In *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

The risks in this case were no different. Rosen's fee was entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. *See* Goldberg Dec. ¶42. Rosen risked non-payment of 354.45 hours of professional time worth $266,841.25, as well as cash expenses of over $17,000, for over a year to bring this case to a successful conclusion. *See* Rosen Fee Dec. (summarizing Lead Counsel's lodestar and expenses in further detail). "This type

of substantial outlay, when there is a risk that no money will be recovered, further supports the award of the requested fees." *Am. Apparel*, 2014 WL 10212865, at *22; *see also City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis").

### 5. Fee Awards in Similar Cases Further Support an Award of 25% of the Settlement Fund

"[I]n most common fund cases, the award exceeds [the] benchmark." *E.g. Omnivision*, 559 F. Supp. 2d at 1047. "This is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *see also Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Courts in the Ninth Circuit commonly award fees of up to one third of the settlement funds where counsels' efforts are substantial and the results superior. *Heritage Bond*, 2005 WL 1594403, at *19 (awarding one-third of the fund, and collecting cases awarding one third of the fund). *See also Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33.33% common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases").

Here, the requested fee is in line with the Ninth Circuit benchmark and within the range of percentages courts in this Circuit have awarded in similar securities settlements. *See In re China Educ. All., Inc.*, No. 210CV09239CASJCX, 2013 WL 12157112, at *1 (C.D. Cal. Mar. 11, 2013) (awarding fees of 25% of $2,425,000 settlement); *Heritage Bond*, 2005 WL 1594403, at *19 (awarding one third of $27,783,000); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592,

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

at *2 (N.D. Cal. July 6, 2011) (awarding 30% of $8.9 million); *Am. Apparel*, 2014 WL 10212865, at *34 (awarding 25% of $4.8 million); *Omnivision*, 559 F. Supp. 2d at 1049 (awarding 28% of $13.75 million).

The requested 25% fee is also lower than contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("[C]ontingency fee arrangements generally range from 30% to 40% of final recovery.").

Nothing of record indicates that this case is an outlier, requiring reduction from the benchmark 25% award.

### 6. A Lodestar Crosscheck Shows the Requested Fee Is Reasonable

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 WL 10212865, at *20; *Vizcaino*, 290 F.3d at 1050 ("the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Courts calculate lodestar by assessing attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). "In securities class actions, it is common for a counsel's [lodestar] figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage Bond*, 2005 WL 1594403, at *22.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012). Here, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly supports the reasonableness of the requested fee.

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Rosen's hourly rates range from up to $950 for partners to $600-$675 for associates. Rosen Fee Dec. ¶5. These rates are consistent with those of other attorneys engaged in similar litigation in this District. *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (in securities class action, approving hourly rates of $750-985 for partners, $500-800 for of counsel/senior counsels, and $300-725 for other attorneys); *Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW, 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8, 2015) (in securities class action, approving hourly rates of between $525 and $975).

Here, Lead Counsel dedicated 354.45 hours of professional time prosecuting this Litigation from its inception through January 12, 2021.[5] Rosen Fee Dec. ¶¶5-6. Lead Counsel's total lodestar, based on its attorneys' current rates, is $266,841.25. *Id.* An award of 25% of the Settlement Fund, or $160,000, results in a lodestar multiplier of

---

[5] In addition to the time expended to date, Lead Counsel will spend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Goldberg Dec. ¶40.

13

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

0.60, *id.* ¶9, well within the range typically awarded in this District. *E.g. Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*, No. 16CV01378CASGJSX, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."). The lodestar crosscheck, therefore, supports Plaintiffs' request for 25% in attorneys fees from the common fund.

### 7. The Settlement Class's Reaction Supports the Requested Fee Award

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21 *see also Omnivision*, 559 F. Supp. 2d at 1048. The Claims Administrator mailed over 2,400 Postcard Notices to potential Settlement Class Members and was notified by three nominees that over 4,700 additional customers received email notifications from the nominees including direct links to the Notice and Claim Form on the settlement website. Evans Dec. ¶7. The Claims Administrator also published the Summary Notice on *Globe Newswire*. *Id*. ¶9. The Postcard Notice and Summary Notice each directed potential Settlement Class Members to where they could access the full-length Notice, which was also posted on a Settlement-specific website. The Notice informed Settlement Class Members that Counsel would seek attorneys' fees of up to 25% of the Settlement Amount, plus interest, and litigation expenses in an amount not to exceed $25,000, and that they would seek awards to Plaintiffs of up to $1,000 each. The notices advised Settlement Class Members of their right to object to any of these requests for relief or request exclusion from the Settlement and explained how to do so.

The deadline for potential Settlement Class Members to submit objections and requests for exclusion is January 28, 2021. To date, no Settlement Class Member has objected to the requested attorneys' fees or reimbursement of expenses, and none has

14

requested exclusion from the Settlement. Evans Dec. ¶¶12-13; Goldberg Dec. ¶17. The positive reaction of the Settlement Class strongly supports the fee request. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("The lack of objection from any Class Member supports the attorneys' fees award").

## IV. LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). The Notice informed potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $25,000. Counsel requests reimbursement of $17,264.10 it incurred prosecuting this Litigation, well within the maximum amount described in the Notice. Rosen Fee Dec. ¶7. These expenses are the types that are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Immune Response*, 497 F. Supp. 2d at 1177.

Lead Counsel pursued this litigation knowing that it could recover its expenses only if Plaintiffs and the putative Class prevailed at trial and survived on appeal or reached a settlement. Goldberg Dec. ¶50. Lead Counsel had no incentive to incur, and did not incur, unnecessary expenses. All of Lead Counsel's expenses were reasonably incurred and necessary for the prosecution of this litigation. *Id.* ¶52; Rosen Fee Dec. ¶7. The bulk of Lead Counsel's expenses consisted of fees for a financial expert, travel expenses, and notice to class members. *Id*. The financial expert was needed to analyze potential damages so that Lead Counsel could properly evaluate and negotiate the Settlement. The remainder of Lead Counsel's expenses consisted primarily of court filing fees, online legal research fees, travel fees, and other miscellaneous expenses. *Id*. Courts have held that these and similar types of expenses are properly charged to the Settlement Class. *E.g., Katz*, 2013 WL 11237202, at *8. The categories of expenses for which Lead Counsel here seek reimbursement are the type routinely billed to hourly

15

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

clients and, therefore, should be paid out of the common fund. Even as Lead Counsel will receive no attorneys' fees until Verb has made all payments to the Settlement Fund, Plaintiffs request that the Court allow Lead Counsel to receive reimbursement for these out-of-pocket expenses in $5,000 increments monthly until satisfied.

## V.    THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFFS

The Court should also award Plaintiffs $1,000 each, for a total of $2,000, for the time they spent representing the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014).

Throughout this litigation, Plaintiffs were available to Counsel as needed and performed their duties with attentiveness and diligence. Plaintiffs: (1) volunteered to file a motion seeking appointment as lead plaintiff; (2) reviewed complaints, motion papers and other pleadings; (3) regularly communicated and corresponded with counsel regarding the litigation and settlement; (4) gathered and produced information to Lead Counsel concerning their Verb investments; and (5) made themselves available to be deposed if needed, and to testify if there was a trial. The Declarations of J. Leister and Alexander Wolfson, attached to the Rosen Decl. as Exhibits 3 and 4, respectively, outline the time and tasks Plaintiffs devoted to this litigation, including filing a lead plaintiff motion, review of pleadings, communicating regularly with counsel, and discussing the Settlement with counsel. As shown in their declarations, Plaintiffs were

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

actively involved and put the concerns of the Settlement Class at the forefront. These are the kinds of activities that warrant reimbursement for named plaintiffs for their time and efforts expended on the Settlement Class's behalf.

The Notice informed Settlement Class Members that Lead Counsel would seek an Award for Plaintiffs not to exceed $1,000 each. To date, no objections have been raised in response to these requests. Evans Decl. ¶13; Goldberg Dec. ¶17.

Courts in this Circuit routinely award representative plaintiffs similar or greater amounts. *See, e.g., Toys R Us-Delaware*, 295 F.R.D. at 472 (approving $5,000 award); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *2 (C.D. Cal. Jan. 27, 2011) (approving award of $3,333.33); *Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) (approving an award of $4,000 to one named plaintiff and $2,000 to another).

Plaintiffs dedicated their own valuable time, faithfully representing the Settlement Class. Here, the requested awards to Plaintiffs are reasonable, amounting to a modest percentage of the Settlement Fund. The Court should award the requested amounts to Plaintiffs.

## VI.    CONCLUSION

For the foregoing reasons, the Court should award attorneys' fees of 25% of the Settlement, or $160,000, together with interest thereon, and expenses of $17,264.10. The Court should also award Plaintiffs $1,000 each, for a total of $2,000.

Dated: January 12, 2021

**THE ROSEN LAW FIRM, P.A.**

*/s/ Jacob A. Goldberg*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

17

Jacob A. Goldberg (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
           jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

18

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2021, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Final Certification of Settlement Class with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES